**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

BENJAMIN S. RICH,

Plaintiff,

v.

JACE PARCELL,

Defendant.

CIVIL ACTION NO. 3:24-cv-02266

(SAPORITO, J.)

# MEMORANDUM

Benjamin S. Rich, formerly incarcerated at SCI-Coal Township, proceeds on an excessive force claim against Jace Parcell, based on an incident in which Parcell deployed OC spray into Rich's cell. Parcell has moved for summary judgment. (Doc. 16).

Rich's claims for injunctive and declaratory relief must be dismissed, because he is no longer incarcerated. Further, because the record indicates that Parcell deployed OC spray in response to a perceived safety concern, and not for the purpose of harming Rich, Parcell is entitled to summary judgment on Rich's claim for monetary damages.

## I. BACKGROUND

As relevant here, Rich's complaint (Doc. 1) alleges that on September 20, 2023, at SCI-Coal Township, Parcell "pepper-sprayed

[Rich] without cause while [Rich] was seeking medical assistance." Parcell sought monetary, injunctive, and declaratory relief. Upon screening of this complaint (and contemporaneously filed complaints) pursuant to 28 U.S.C. § 1915A, several unrelated claims and defendants were dismissed, and Rich was permitted to proceed on an Eighth Amendment excessive force claim against Parcell. *See* (Docs. 4, 5).

Parcell moved for summary judgment after the close of the scheduled discovery period. The Court extended discovery, and Rich's response deadline, to address a series of discovery disputes. While these disputes were pending, Rich filed a response to the motion (Doc. 28) and a supplement to that response (Doc. 31). Any further submission in opposition to summary judgment was to be made by June 22, 2026. (Doc. 32). Rich has made no further filings, making this motion ripe for review.

## II. LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a

genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## III. Material Facts

Rich's statement of material facts does not comply with the local rules of this district, because it does not directly address the facts in Parcell's own statement. *See* (Doc. 28 at 2-3); M.D. Pa. L.R. 56.1. Nonetheless, we have considered all the evidence and argument that the parties have submitted. *See* Fed. R. Civ. P. 56(c)(3). Where Rich has not presented competent evidence to dispute Parcell's statements of fact, those facts are deemed undisputed. *See* Fed. R. Civ. P. 56(e)(2).

The summary judgment record indicates as follows: On September 20, 2023, at SCI-Coal Township, Rich[1] was assigned to the "Custody Level

[1] During the period at issue, Rich was known within the Department of Corrections as Samuel Guillaume. For clarity, we refer to Rich by his current name.

5 housing unit ('RHU')." The RHU is designed for inmates who require "continual direct and indirect supervision by staff" and "would pose a high level of risk to others or may be at risk themselves" if housed with the general population. (Doc. 17-2, ¶¶ 1-2).

On the date in question, Parcell was passing out food trays to inmates, and observed Rich "laying on his cell floor with his face down." Parcell "knocked on the cell door, and called [Rich's] name several times," but Rich was "unresponsive."[2] Parcell was concerned that Rich was "engaging in . . . self-harm, or was pretending to be non-responsive so a correction officer would enter his cell." Parcell deployed a three-second[3] burst of OC spray into the cell. "Immediately" after the spray was

---

[2] In his brief, Rich argues that his reaction to the OC spray "undermines [Parcell's] assertion that [Rich] was 'unresponsive'" prior to the spray. (Doc. 28 at 5). As further described below, video of this incident shows Rich acknowledging that he was unresponsive. To the extent this fact is disputed, Rich does not substantiate that dispute in his own statement of facts, nor does he explain what his response was or provide any evidence of it.

[3] Although Parcell describes this as a "1-3 second burst" of OC spray, another officer's report of this incident describes it as a "3 sec[ond] burst." *See* (Doc. 17-1 at 25). For purpose of this motion, we construe the record in the light most favorable to Rich, the non-movant, and assume that the OC spray was deployed for three seconds.

deployed, Rich got up and responded to Parcell: "Why did you spray me? I was unresponsive." (Doc. 17-1 at 17, 21, 25; Doc. 17-2, ¶¶ 3-5; Doc. 28-1 at 1).

Rich was restrained and escorted from his cell for medical examination and "decontamination" from the OC spray. We have reviewed video showing some of the escort and decontamination (but not the deployment of OC spray). *See* (Doc. 28-5). The video shows that Rich was first escorted to a small enclosure, where he lay slumped on the floor in apparent distress. *See* (Doc. 28-5 (Handheld Camera), 00:05-03:20). After about two minutes in the enclosure, Rich got into a kneeling position and asked: "Am I on camera?" The camera captures the following exchange between Rich and another officer:

> [Officer]: You are on camera, yes. You were unresponsive, you were –
>
> [Rich]: Why would you do that? I'm [unresponsive] because I'm trying to get your attention. I passed out. I was – I told you. I have chest pains and I have stomach pains. You don't see all the blood in the toilet? I told you, I'm having bloody –
>
> [Officer]: Listen . . . I'm going to give you some napkins before I clean your face out. Or would you like to stay there –
>
> [Rich]: Look at my toilet. Look on the floor. I'm having a problem. I've been . . . I'm telling you . . .

(*Id.*, 3:20-3:58).

Rich does not allege any excessive force arising from the escort or the decontamination. He showed no signs of complications or lasting injury from the OC spray. *See* (Doc. 17-3 at 1-8). Approximately one hour after this incident, Rich told medical staff he had been "having abdominal pain with rectal bleeding so he was kneeled down on the ground and could not get up to the door" when Parcell arrived. (*Id.* at 9-11).

## IV. Discussion

### A. Injunctive and Declaratory Relief

In addition to monetary relief, Rich has requested preservation of video, an "independent investigation" into his complaint, "mandatory retraining of staff," a "prohibition order" barring any contact with Parcell, and a declaration that Parcell's actions violated his constitutional rights. Although not addressed in the parties' filings, it is apparent that these requests for injunctive and declaratory relief are now moot because Rich has been released from prison.

Article III of the Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies." *See* U.S. Const., art. III, § 2; *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)). "A federal court has

neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). Therefore, "an inmate's transfer from the facility complained of generally moots [his] equitable and declaratory claims." *Sutton*, 323 F.3d at 248; *see Griffin v. Beard*, 401 F. App'x 715, 716-17 (3d Cir. 2010). Even if a prisoner challenges conditions that persist at the prison after he departs, he no longer has an interest in the challenged conditions sufficient to sustain jurisdiction. *See Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993) ("[T]he district court could not provide Abdul–Akbar with meaningful relief by entering an injunctive order [regarding the unit] in which Abdul–Akbar no longer was incarcerated."); *see, e.g.*, *Cobb v. Yost*, 342 F. App'x 858, 859 (3d Cir. 2009).[4]

[4] Although there is an exception to this doctrine for cases "capable of repetition yet evading review," Rich's case does not fall into that category. The exception is "limited to cases presenting two elements: '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again.'" *Abdul-Akbar*, 4 F.3d at 206 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)); *see, e.g.*, *Montanez v. Beard*, No. 4:04-CV-2569, 2015 WL 2451770, at *3 (M.D. Pa. May 21, 2015).

Therefore, the Court lacks jurisdiction to consider summary judgment on Rich's claims for injunctive and declaratory relief, and those claims must be dismissed.

**B. Monetary Relief**

Rich proceeds on an Eighth Amendment excessive force claim for monetary damages. As relevant here, the Eighth Amendment bars cruel and unusual punishment, including "the unnecessary and wanton infliction of pain" on prisoners. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6 (internal quotation marks omitted). For this determination, courts consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Giles v.*

*Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). Because these factors overlap in how they apply to this case, we consider them collectively.

The record shows that when Parcell encountered Rich lying face down and unresponsive in his cell, Parcell subjectively perceived a need for force based on the risk that Rich could harm an officer. However, beyond the general fact that some inmates in the RHU pose a "high risk to others," Parcell presents no evidence demonstrating that Rich posed a threat to officer safety in these circumstances.[5] Parcell attests that his actions were informed by unspecified "training and experience," but that conclusory assertion does not demonstrate that his assessment of the risk was reasonable. A jury could find that deploying OC spray on a subdued and unresponsive inmate, in short order[6] and with no explicit warning,

[5] Parcell points to evidence that Rich received "three misconducts for refusing to obey an order" between May and September 2023, *see* (Doc. 17-5), but there is no indication that those involved threats to safety, or that Parcell was aware of Rich's misconduct history at the time of this incident.

[6] It is unclear how much time passed from the time Parcell called to Rich until the time he deployed the OC spray. Reading the record favorably to Rich, it may only have been a few seconds.

was not reasonable.[7]

The video of this incident shows Rich in obvious discomfort as he was being escorted and decontaminated. However, courts consider a short burst of OC spray to be a relatively minor force in the Eighth Amendment context, and it caused no lasting injury to Rich, which favors summary judgment for Parcell. *See*, *e.g.*, *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) ("temporary discomfort" from OC spray did not support an excessive force claim); *Warrick v. Harry*, No. 3:23-CV-591, 2024 WL 2059084, at *5-6 (M.D. Pa. May 8, 2024); *Martin v. Wetzel*, No. 1:18-CV-00215, 2021 WL 2926005, at *11 (W.D. Pa. July 12, 2021).

Parcell tried to avoid using OC spray by knocking on Rich's cell door and calling out to him "several" times. The record indicates that Rich

[7] *See*, *e.g.*, *Spada v. Houghton*, No. 22-2816, 2024 WL 4784382, at *4 (3d Cir. Nov. 14, 2024) (jury could find that OC spray was excessive where "there was no apparent threat of harm or disturbance and [the inmate] was returning to his bunk with his back turned"); *Stevens v. Poor*, No. 1:22-CV-00660-SEB, 2024 WL 3621124, at *7 (S.D. Ind. Aug. 1, 2024) (if an inmate was unconscious, a jury could "reasonably find that no force was needed, so any use of OC Spray was excessive"); *but see Hill v. Edinger*, No. 3:13-CV-2442, 2015 WL 1164202, at *2 (M.D. Pa. Mar. 13, 2015) (granting summary judgment to a defendant who applied two two-second bursts of OC spray to an inmate lying on the floor, unresponsive; "correctional staff was faced with a situation involving a prisoner with a history of disruptive behavior and which required an immediate response").

intentionally declined to respond in an effort to "get [officers'] attention"; it is clear that he heard Parcell, because he reacted "immediately" to the spray by saying: "Why did you spray me? I was unresponsive." Although Rich had medical concerns, he presents no evidence that this precluded him from responding to Parcell in some way, or that his medical issues made it unsafe to deploy OC spray.

Most importantly, there is no evidence that Parcell interpreted Rich's lack of response as a request for medical attention. Ultimately, it is undisputed that Parcell acted out of concern that Rich had harmed himself or was trying to ambush an officer. *See Whitley*, 475 U.S. at 319 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize [cruel and unusual punishment] . . . The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable."). Rich's distress from this incident is apparent from the video, and the record suggests that Parcell may have over-reacted to an unlikely threat of harm, but "any such over-reaction would still fall short of supporting a finding that [Parcell] acted

'maliciously and sadistically.'" *Fuentes v. Wagner*, 206 F.3d 335, 346 (3d Cir. 2000) (abrogated on other grounds).

Even if Rich's claim could withstand summary judgment on the merits, Parcell would be entitled to qualified immunity. Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Qualified immunity applies to government officials performing discretionary functions unless (1) the "facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation," and (2) the alleged right was clearly established at the time of the violation. *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023). For a right to be clearly established, courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Therefore, a clearly established right is one so apparent that "every reasonable official would understand that what he is doing is unlawful." *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020) (quoting *Dist.*

*of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

Although Rich's arguments have some support in case law, our review shows no "clearly established" right to be free from the brief use of OC spray in a situation when a prison official perceives an immediate safety concern. *See* n.7, *supra*. Existing law has not proscribed Parcell's conduct "beyond debate"; therefore, Parcell would be entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, Rich's claims for injunctive and declaratory relief must be dismissed, and Parcell is entitled to summary judgment on Rich's remaining claim for monetary damages. An appropriate order follows.

Dated: July 31, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge